May it please the court, your honor, Benjamin Ramos on behalf of Mr. Holsey, appellant. I'd like to reserve two minutes. Okay. Your honor, I have only a few points of clarification I'd like to make. I think the briefs address most of the issues, but there are a few factual matters that were not addressed that I wanted to stress, and those are, first, beginning with the legal point that Mr. Holsey's failure to register in this case within five days of his birthday did not undermine the purpose of the sex offender registration process. A respondent argues that Mr. Holsey's recidivism shows that he's unwilling to comply with parole conditions and that he's a risk to society. And I would say that factually that's not correct. There's an abundance of facts that actually haven't been cited previously that I want to cite now that show a pattern on Mr. Holsey's part of complying with the registration requirement. And this is that there's an abundance of evidence that the trial court went through to show that your client had a miserable history of recidivism. He violated parole routinely over a course of more than 20 years. In fact, the reason that the police here discovered that he had failed to register was because there was another complaint filed by a woman where he had been moving her along and that was peeking in her windows. That is correct, Your Honor. I would distinguish the type of recidivism, though. The district judge looked at this and found that his parole violations, that his recidivism consisted mainly of parole violations. And she pointed, the only two she could find were for him being under influence of a controlled substance. There was no violence. There was no felony recidivism. And that's talked about in the case law. But about the fact that your client was discharged from parole for reaching the statutory maximum amount of time that he could be incarcerated. And therefore, even though he didn't really feel like he was ready to go, they discharged him because they had to. What does that lead to? Where does that fact take us? I mean, I sat on the district court and I looked at this particular situation. He violates his parole. He doesn't really get discharged from parole because he does a good job. He has to go right to the end and they discharge him because they run out of time. He does register, but he doesn't register often. I mean, he registers sometimes, sometimes he doesn't. And he's got pretty heavy violent crimes that he has in his record. And then the ultimate part of that is reading all of that and going through it. Then I have to look at that through the glasses of Edmund. I would say that Mr. Olyp is documented in the record that he had a long history of drug and alcohol problems. And I'm not sure if he's getting treatment for that. But I think a lot of his parole violations and recidivism are related to that and his mental health problems. In 2009, he went to the police station in Roosevelt and gave a new address there, showing that he was intending to comply with the registration requirement. And when he was later contacted by the police officer regarding a complaint for him bothering a woman, he told them where he was living. He gave them the correct registered address. So there's no evidence that he was trying to hide from surveillance or evade the police. He told them that he hadn't registered, he knew he hadn't registered, and he was waiting for them to send him a reminder. And that's what he said, I agree, that's what he said. And he didn't do anything for two weeks. The trial court took into account the drug history and alcohol abuse. He says the fact that he is unemployed, has a history of drug abuse and alcohol abuse, I think his chances and prospects of rehabilitation are down. So what's wrong, what makes that an unreasonable finding of the act by the state court? Well, for one thing, the state court didn't address the issue that I'm trying to focus on here regarding the violation of the registration requirement to register within five days of your birthday and the separate requirement to register after a change of address. And that's a huge distinction based on both state and federal case law. And that was just glossed over by the sentencing judge. He made really no recognition of that factor, and he focused almost entirely on Mr. Hulsey's very old case. Those distinctions were drawn on the two cases that are most in your favor, which is Carmody and Gonzalez. But in both of those cases, he took into account both of those cases, said they were distinguishable. The California Court of Appeals says we looked at both of those. We agree with the trial judge on that. So where's the unreasonable finding, the fact? Where's the violation of clearly established Supreme Court law? I think it comes with the—my argument is it comes with the recognition of the argument that's imposed in this case, the 28-year-to-life sentence imposed on someone who commits a crime that's regarded as no more serious than overtime parking. That's the violation right there. But the California Supreme Court has issued a decision since Gonzalez and Carmody saying that you take into account all of the facts. And that's exactly what the trial judge did here, went through all of the probation violations, all of the parole violations. The times when he was let out of jail and was taken back into jail the following day or two weeks later or a month later, those records don't even come close to the kinds of records that Carmody and Gonzalez had. And that really can't be disputed, Your Honor. That can't be disputed. But I would say the severity of his noncompliance with parole is certainly— Well, you're really asking—all right. If you can't dispute that the record is quite different in Gonzalez and Carmody, those cases don't do any good for you. So now you're going to have to tell us what Supreme Court case this California decision violates. Now, I think that Carmody and Gonzalez do help. They'll help in these cases. You just told me that you understood that those records were quite different since the California Supreme Court has told us we take into account the record. And those records were very different from this case. Your guy has a long history of parole violations and just an inability to follow any rules, whether it's to do alcohol or drug. He isn't following the rules. But he is. The record shows that he was trying to comply when he went to the police station in 2005 and 2006 and registered in 2009 twice. Registered in 2007. The record— 2008. I think he was back in jail for a parole violation of some sort. But he was making an effort to comply. He wasn't trying to obey. But not complying with the requisites, the terms of his release from prison for other offenses. That's why he was sent back to prison repeatedly. Well, as far as I can tell, he was violating parole for some reason. The district court said two were for control, being under the influence of controlled substance. So that's different from committing armed robberies, burglaries, other serious felonies. He has a drug and alcohol problem that's documented in the record, and that's his major problem. He's not—I don't know enough of the facts to explain, but he does have a drug and alcohol problem, and he's been dealing with it for a long time. And his recidivism has not been violent. There's been no felony recidivism since, well, I think the early 2000s. So what are you asking? What relief are you seeking from us? All right. I think that this court should declare that his sentence violates the Eighth Amendment and reverse the decision of the lower court. I understand that's sort of the method of relief you seek. But what would you say, assuming we accept your argument, go back and do it again? Would we have to come up with what we think is a reasonable— I mean, assuming we accept your argument that this is not reasonable, what would that have to look like? Would we say, just go back, try again, and then we'll see whether that's right? Would we say a sentence no more than X years? I'm just trying to imagine what kind of further relief are you specifically seeking? And if there is an X in there, what do you think the X should be? If we say, you know, this sentence is not reasonable, but, you know, it's a lesser sentence made up about a reason, what would that be? That is a very difficult question to answer. I don't think there's clear enough guidance. It's a little more time, so. I mean, I think the court—I think the best the court could do is say that this particular sentence violates the 8th Amendment and— No, try again. And reset the sentence and file it? No, file it. With a sentencing judge. And I got hit like that from federal courts. I think those guys are crazy. I said, you know, I did my best. You know, I think this is reasonable. And they don't think it's reasonable, but if they say try again, I'm just warning you. I would have to rely on the prior presses as soon. You know, having come up with what the judge says is a reasonable sentence, does he think we need to give some guidance as to what we think would be reasonable? I mean, I don't know how to carry out that kind of thing. It came to me. You know, you did this saying you thought it was reasonable when you disagree. Try again. You don't think we need to say what we think would be a reasonable sentence, in which case if we have to say, don't you think you owe it to us to tell us what you think we should say on behalf of your client, or you should tell us what would be the sentence you would consider reasonable? I think it would have to be determined under state law, given Mr. Tulsi's priors. I haven't calculated that myself. I think the answer is no. I don't know the exact number of years. I don't know the exact number of years that would be reasonable. I can't give you that now. But I think that it could be determined. I was just wondering about that. All right. Okay, we'll just talk about the court. Good morning, Your Honors. Kenneth Sikoler from the state. The question here is whether a fair-minded jurist under Section 2254D could find that the sentence was not grossly disproportionate principle that was described by the Supreme Court in Lockyer v. Andrada, who said that the only guiding principle under Section 2254D is that a gross disproportionality principle is applicable to sentences for terms of years and that its precise contours are unclear. I mean, the offensive question is almost a regulatory offense. It's in Australia to register. It's not anything that in the real world causes harm. I mean, it doesn't involve bribery or drug abuse or moustache or anything else. It's in Australia to go and have someone to come and perform. And he got a lot of time for that, I think. Yes, he did. I have two responses to that. One is that it goes to a more important state goal, which is to keep track of sex offenders, and if defendants are routinely failing to renew their annual registrations. That's true of all regulatory offenses. You know, they always serve an important government purpose, but you will agree with me that in the case he was in, it is failure to register. So that violation in its nature was bad than playing a gun and pointing at somebody or hitting somebody on the head or engaging in abuse. There's a long list of things that people can do to each other that seems to be inherently worse than failure to register, important as registration may be. I would agree with that, Your Honor. But I think when we look at the nature of the offense here, as the California Supreme Court said, in Coley and as this Court did in the previous Gonzales case, we look not just at the offense in isolation. Are you Gonzales understanding? Pardon me? Are you okay with Gonzales being able to register? Yes. It was extremely easy to understand. That's the best place for you to say yes, sir. Yes, Your Honor. Very well done. It was an exceptionally well written opinion. I think I can get to the core of my argument by pointing out, as I did in the brief, in what ways this case is distinguishable from Gonzales. The Court got at some of those distinctions during the argument with my opposing counsel. First of all, Mr. Holsey's record was much worse than Mr. Gonzales' record. We have four prior felony convictions, six misdemeanors, and nine probation violations, one of which was one of those misdemeanors. A question about that. So the trial court here finds that he is a recidivist, and for purposes of sort of the question of recidivism, can we take into account parole violations as opposed to convictions? No, I think I would make a slight definitional difference. I think when we're talking about recidivism, and we haven't briefed the exact definition, I think that parole violations are part of the overall picture of ability to follow the law. That's important in a case like this because if we're only going to look at convictions, then his last conviction, as far as I can tell, was in 2002, and that was for a failure to register. Then we'd have to go back eight years earlier to 1994. That's his conviction for annoying law enforcement. That's correct, Your Honor, and that was his second failure to register conviction, by the way. He was sentenced to five years for it, but his term didn't expire until 2009 because it was on the sentence for that conviction that he had five separate parole violations, including one that he committed the day after being released. So in this case, the length of time between his most previous conviction and the instant conviction does not mitigate his culpability because he was in and out of prison for almost all of that time. Do we know what the parole violations are for? The suggestion in your brief was that they were for alcohol and drug, and that's what Mr. Holsey's counsel said. We don't get a lot of detail as to what they're for, and some of them are very quick. As you point out, one of them was the day after he was released. He's put right back. If we're talking about those five since the last conviction, one of those was for disorderly conduct under the influence of drugs or alcohol, and the record doesn't show what the other ones were for in terms of the previous five parole violations. I recall that one of them was for the misdemeanor, for an act that ended up being a misdemeanor conviction as well, and this was where he went up to a 10-year-old boy and lowered his pants and said, I'm going to make you suck my penis like an ice cream cone the way I did to the other kids. But he gets a misdemeanor conviction for what? The way I understand the record is his parole was revoked for that one, and he got a misdemeanor violation. So that is one of the nine parole violations. He was acquitted of the felony charge in that case. I don't recall it. That's the 1994. Correct. Yeah. Yes, I believe that's correct. I believe he was committed. He was acquitted of the felony charge. I mean, there's no doubt that this is not a law-abiding guy. There's no, you know, he's done some very respectable things. There's no doubt about it. But as I think Judges by these questions have pointed out, a lot of the stuff has to do with failure to register, failure to abide by conditions of parole. And, you know, I think all of us who sell condoms and stuff and sugar sweets or have done a lot of cases like that, you have to start thinking of somebody who just can't keep his lips clean, who just can't show up for supervised release, you know, can't talk to his probation officer, parole officer, probation officer, whatever. But that is, to me, different in crime than somebody who goes out and does crimes in the real world. And, you know, the incident you mentioned, there are some incidents in his past where he has done real stuff in the real world, and it's nasty, but they are, as I think Judges by these questions pointed out, they are a long time ago. They are a long time ago. Most of what's happened, most of what his record consists of recently is just not complying with the requirements of registration of parole, probation, all of that stuff. So I'm having trouble seeing where that's really such bad stuff, such a brutal sentence. Your Honor, I think it's all part of the same picture with Mr. Holsey. It's part of an all-around contempt for following the rule of law. This was an intentional violation here, as the district court found, which contrasts with the violations in Carmody and Gonzalez. And it's significant that he had two prior violations for failure to follow the registration statute, including the most recent felon, had been a felony violation of it, for which he had been sentenced to five years. So if anyone should have been following this rule, he should have. His many parole violations figure into that, and I would also look at his reaction after the misdemeanor conviction. For those words he uttered to the 10-year-old child about morally copulating him when he said to the parole department, this is bullshit, you can't do anything to me. This is all part of a larger pattern of contempt for following the rule of law. And I think that this particular violation fits into that, and it really affects the character of this violation, and that's why we have to do, as Gonzalez and his colleagues said, look at the overall picture. And getting back to one point about parole violations, I don't know that parole violations count technically in the definition of recidivism, but they can be considered in evaluating an Eighth Amendment disproportionality claim. They were specifically mentioned, for instance, by the Supreme Court in the Ewing v. California case, which referred to Mr. Ewing's felony violations and misdemeanor violations and crimes committed while on parole. To sum up, there are four important aspects that differentiate this case from Gonzalez. One is his record. Second is the fact that his record consists of two prior convictions for violating this law. Third is the deliberate nature of his violation, as compared with the violations in Carmody and Clough and Gonzalez, which were merely negligent oversights. And third, rather fourth, which I explain in detail in the brief, is the change in the understanding of the nature of this crime, which was explained by the California Supreme Court in Coley, subsequent to this court's Gonzalez decision, when the court explained that in evaluating the seriousness of this particular offense, the failure to annually renew, we evaluate the overall circumstances, including whether it was a deliberate violation, and including the defendant's prior record. Thank you. Thank you, Your Honors. It's about Your Honor's time. I'd like to take a minute to wrap up. Thank you, Your Honor. Your Honor, regarding counsel's comment that the violation in this case was intentional, that is not in the state court record. That comes from the district court judge's finding, which is not what's under review. As for contempt for the law, as I mentioned. I'm sorry. Counsel mentioned that Mr. Reyes. Well, I got that part, and I got the part where you say, in the space of this court's five people, understand what you said follows from that. Don't we owe the district court as much deference as the superior court? I think that what the court, I'm talking about the review of this last state court decision, not containing the facts that counsel mentioned. If there's no finding on that, and the district judge makes a finding, don't we treat that finding as equivalent to what the state court did for you? I think there is deference there, Your Honor. I think there is some deference. But I just want to point out for the state court record, it's been reviewed by the trial court, the court of appeal, and there was no finding. In fact, the courts recognized that this violation can occur negligibly, and that's an oddity in the law that someone can be convicted and receive this harsh sentence for just a negligent failure to register, which is bizarre. I mean, you'd have an interesting case if there were no finding in the state court, and then the district judge found this was a negligent or accidental or inadvertent violation. Then we'd have a tough case, I think. But in this case, the district judge, the federal district judge, fills in the finding that the state court didn't make. So, Mason, I don't know what you would do with that. Well, I think we have to treat that as a deliberate violation. I'm sorry, as an intentional violation, right? Well, I think it's just an unsupported finding. The judge did find that. He says, I'm waiting to get a reminder. I don't know why I'm waiting to get a reminder. It isn't actually an admission of intentionality. It's sort of like saying, I know I'm supposed to pay my taxes, file a tax return, but I'm waiting for the IRS to send me a reminder. It doesn't mean it's unintentional. It just sounds like he was able to get away with it until he got a reminder, but he's not entitled to a reminder. That's true. I mean, if he had said, I forgot or I believed it or not, but saying I was waiting for a reminder is almost an admission of intentionality, isn't it? It could be viewed that way. I can see that. Well, can you persuade me that it could be viewed a different way? Well, indeed. How can you wait for something if you don't? How can you inadvertently be waiting for something? It's difficult. That issue is difficult because it wasn't addressed. There was no defense presented, no evidence of trial on the issue, so it's hard to reconstruct how it could work in the defense's favor. But once again, Mr. Olson has a long history of mental problems. In fact, I recall the record, he was diagnosed as psychotic at one point. Perhaps that should have been explored, but it's not a good excuse to say that I was waiting for someone to remind me to do this. He'd done it before. However, it's still, even if that violation is considered to be intentional, it's still not the kind that implicates all the public safety concerns in the three-strikes law. He's not evading police. He's not giving incorrect information, false IDs, not hiding from them. He keeps telling the police when they contact him, I live at my registered address, and that's where they arrest him. So counsel's argument, I think, gets into a point where Mr. Olson is being basically punished for his recidivism, which Carmody talked a lot about when he said that violates the Eighth Amendment when you're just punishing him, looking at an awful record of his past. That violates the Eighth Amendment, particularly where the trigger defense that triggers that consideration is one that's just a technical, harmless regulatory violation that doesn't implicate any public safety concerns. I think harmless is going a little too far to say it's harmless. I mean, the state has found that this is harmful. The state Supreme Court has said it's harmful. Well, let's call it harmless. But anyway, I think we understand your argument. Thank you, Your Honor. Thank you. Okay. Thank you.
judges: Kozinski, Bybee, N.R. Smith